# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| ELEANOR THOMAS, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-09-3162 |
| § | |
| SUN LIFE ASSURANCE COMPANY § | |
| OF CANADA, § | |
|     Defendant. § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 18] filed by Defendant Sun Life Assurance Company of Canada ("Sun Life"), to which Plaintiff Eleanor Thomas filed a Response and Cross-Motion for Summary Judgment ("Cross-Motion") [Doc. # 20]. Sun Life filed a Reply in support of its Motion [Doc. # 21] and a separate Response to Plaintiff's Cross-Motion [Doc. # 24]. Having carefully reviewed the full record and having applied the governing legal standards, the Court **grants** Sun Life's Motion and **denies** Plaintiff's Cross-Motion.

## I.   BACKGROUND

Plaintiff began working for St. Luke's Episcopal Health System ("St. Luke's") in October 1988. As an employee of St. Luke's, Plaintiff was a participant in the St. Luke's Episcopal Health System Medical, Dental and Life Plan (the "Plan"). It is uncontroverted that the Plan is an employee benefit plan governed by the Employee

Retirement Income Security Act ("ERISA"). The Plan provided life insurance coverage for the employee (Plaintiff in this case) and her dependents, including her spouse.

In the early 1990's, Plaintiff and Ardis L. McCall lived together. It is undisputed that Plaintiff and McCall were never formally married. In 1995, Plaintiff and McCall stopped living together. In 1998, McCall moved to Louisiana, where he married Patricia Dotson, to whom he remained married until his death on August 27, 2007.

Upon learning of McCall's death, Plaintiff filed a claim for life insurance benefits under the Plan, asserting that McCall was her common law husband. In support of her claim, Plaintiff submitted her own affidavit and affidavits from individuals stating that McCall and Thomas lived together and referred to each other as "husband" and "wife."

The claim was denied following the initial review. The claim was again denied following *de novo* appellate review by a different claim examiner who was an appeal specialist. Plaintiff then submitted additional materials, which Sun Life agreed to review. Sun Life again denied Plaintiff's claim for life insurance benefits, which was based on the assertion that McCall was her common law husband and, therefore, a dependent covered by the Plan.

Plaintiff filed this lawsuit in Texas state court on August 26, 2009. Defendant removed the lawsuit to federal court, asserting federal question jurisdiction because the dispute is governed by ERISA. Both parties filed timely motions for summary judgment. The motions have been fully briefed and are now ripe for decision.

## II.   STANDARD OF REVIEW FOR ERISA CLAIM

The United States Supreme Court has held that the denial of benefits under an ERISA plan is "reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Conkright v. Frommert*, __ U.S. __, 130 S. Ct. 1640 (Apr. 21, 2010); *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002). The Plan in this case grants Sun Life "entire discretionary authority to make all final determinations regarding claims for benefits," thus giving Sun Life discretionary authority to decide claims for benefits.[1] Where, as here, the plan grants to the

---

1   The United States Supreme Court has recognized that there exists a conflict of interest where "the plan administrator both evaluates claims for benefits and pays benefits claims." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343, 2348 (2008). In those cases, the existence of such a conflict is a factor to be considered in determining whether the insurer abused its discretion in denying a claim. *Id.* at 2351. "The plaintiff has the burden to produce evidence that a conflict exists." *Menchaca v. CNA Group Life Assur. Co.*, 331 F. App'x 298, 302 (5th Cir. 2009) (citing *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 270 n.18 (5th Cir. 2004)). Plaintiff asserts that there is a conflict in this case, but Plaintiff has not identified any evidence in the administrative record that supports her assertion.

administrator discretionary authority, the reviewing court applies an "abuse of discretion" standard. *Meditrust Fin. Servs. Corp. v. The Sterling Chemicals, Inc.*, 168 F.3d 211, 213 (5th Cir. 1999).

Courts in the Fifth Circuit apply a two-prong test when reviewing an administrator's denial of benefits. First, the Court determines the "legally correct interpretation of the [Plan]." *Lain*, 279 F.3d at 344 (quoting *Tolson v. Avondale Industr., Inc.*, 141 F.3d 604, 608 (5th Cir. 1998)). If it is found that the administrator failed to give the plan "the legally correct interpretation, [this Court must] then determine whether the administrator's decision was an abuse of discretion." *Id.* (quoting *Tolson*, 141 F.3d at 344).

"In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously." *Meditrust*, 168 F.3d at 214 (internal quotations and citations omitted). "When reviewing for arbitrary and capricious actions resulting in an abuse of discretion, we affirm an administrator's decision if it is supported by substantial evidence. A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (internal quotations and citations omitted); *Lain*, 279 F.3d at 342. The administrator abuses its discretion if its decision is not supported by substantial evidence in the administrative record and is erroneous as a matter of law. *Wilbur v. Arco Chem. Co.*, 974 F.2d 631, 646 n. 12 (5th Cir. 1992); *see*

*also Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 302 (5th Cir. 1999) ("Without some concrete evidence in the administrative record that supports the denial of the claim, we must find the administrator abused its discretion."). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004); *see also Wade v. Hewlett-Packard Dev. Co. LP Short Term Disability Plan*, 493 F.3d 533, 541 (5th Cir. 2007). The Court "may inquire only whether the record adequately supports the administrator's decision." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 314 (5th Cir. 2007) (internal quotations and citations omitted).

The Court is limited to review of the administrative record that existed at the time of review by the plan administrator. *See Gooden v. Provident Life & Acc. Ins. Co.*, 250 F.3d 329, 333 (5th Cir. 2001); *Read v. Sun Life Assur. Co.*, 268 F. App'x 369, 371 (5th Cir. Mar. 7, 2008) (citing *Estate of Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir. 2000)).

### III. <u>ANALYSIS</u>

The single disputed issue for decision by the Plan Administrator was whether McCall was Thomas's common-law husband at the time of his death in 2007. It is undisputed that any common-law marriage that may have existed was never formally dissolved.

Texas has recognized common-law marriages since 1847, but that recognition has been "grudging." *See Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) (citing *Tex. Employers' Ins. Ass'n v. Elder*, 274 S.W.2d 144, 147 (Tex. Civ. App. – Fort Worth 1954) (noting that the law "does not favor, but merely tolerates . . . common-law marriages")). In 1989, in connection with a failed attempt to abolish common-law marriages in Texas, the law was amended to "make proof of common law marriages more difficult in Texas." *Russell*, 865 S.W.2d at 931. After that amendment, to establish a common-law marriage in Texas, the proponent of the marriage must prove (1) that both parties agreed to be married; (2) that they lived together after the agreement; and (3) that they represented to others that they were married.[2] *See* TEX. FAM. CODE § 2.401(a)(2); *Russell*, 865 S.W.2d 929, 932 (Tex. 1993); *Hart v. Webster*, 2006 WL 1707975, *2 (Tex. App. – Austin 2006, *no pet.*). In this case, it was undisputed that McCall and Thomas lived together.

The disputed issue was whether McCall agreed to be married to Thomas. "In a society in which non-marital cohabitation for extended periods of time is far more common that it once was, the fact-finder will have to weigh the evidence of a tacit agreement [to be married] more carefully than in the past." *Russell*, 865 S.W.2d at

---

2  ERISA cases are governed by federal common law with guidance from applicable state law to the extent it is not inconsistent with ERISA policy concerns. *See Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504, 507 (5th Cir. 2005); *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 818 (5th Cir. 1997).

932 (quoting Joseph W. McKnight, *Family Law: Husband and Wife*, 44 S.W.L.J. 1, 2-3 (1990)). As a result, factually "sufficient evidence of cohabitation and public representation will not necessarily constitute legally and/or factually sufficient evidence of an agreement to be married." *Russell*, 865 S.W.2d at 933. The "circumstances of each case must be determined based on its own facts." *Id.*

In this case, there are two relevant presumptions. The first is a rebuttable presumption that there was no agreement to be married where, as here, the proponent of the common-law marriage does not commence a proceeding to prove the marriage within two years after the parties separated and ceased living together. *See* TEX. FAM. CODE § 2.401(b); *Joplin v. Borusheski*, 244 S.W.3d 607, 611 (Tex. App. – Dallas 2008, *no pet.*). When the presumption arises, the proponent of the marriage is required to "produce sufficient evidence of an agreement to be married to rebut the statutory presumption . . . ." *See id.* at 611-12.[3]

The second presumption is that where, as here, "two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be

---

3 Plaintiff argues that she needs only present some evidence and the presumption "disappears" and cannot be considered, citing *Sudduth v. Commonwealth Cnty. Mut. Ins. Co.*, 454 S.W.2d 196 (Tex. 1970). In *Sudduth*, a case involving a presumption of nonmailing that arises from evidence that the letter was not received, the Texas Supreme Court noted that it is technically true that the presumption "does disappear" when evidence to the contrary is introduced. The Texas Supreme Court clarified, however, that the "facts upon which the presumption is based remain in evidence and will support any inferences that may properly be drawn therefrom." *Sudduth*, 454 S.W.2d at 198.

valid as against each marriage that precedes the most recent marriage. . . ." *See* TEX. FAM. CODE § 1.102; *Phillips v. The Dow Chem. Co.*, 186 S.W.3d 121, 128 (Tex. App. – Houston [1st Dist.] 2005, *no pet.*). To rebut this presumption, the proponent of the earlier marriage must prove its existence and validity. *Phillips*, 186 S.W.3d at 128.

Plaintiff presented her own affidavit that she and McCall entered into a common-law marriage. Plaintiff also presented affidavits from Johnny Grassity, a long time friend, and from Gwnedolyn McCall, McCall's niece. Each affiant stated that Thomas and McCall lived together and referred to each other as "husband" and "wife." It is undisputed that Thomas and McCall lived together. However, evidence of a couple's references to each other as "husband" and "wife" is inadequate to prove an agreement to be married without corroboration. *See Russell*, 865 S.W.2d at 932. This is particularly true where, as here, the references are in social settings rather that in situations "with the consequence of liability (as when an alleged spouse seeks admission of the other to the hospital). . .." *Id.*

In those cases where there was sufficient evidence of an agreement to be married, there is generally objective evidence of the non-proponent's agreement. For example, in *Lewis v. Anderson*, the parties had adopted two children, each time identifying themselves in legal documents and testimony as husband and wife. *See Lewis v. Anderson*, 173 S.W.3d 556, 559 (Tex. App. – Dallas 2005, *no pet.*). The court in *Lewis* relied heavily on the evidence of the non-proponent's "willingness to

sign or accept without question legal documents referring to an existing marriage." *Id.* at 562. Similarly, in *Hart v. Webster*, the Court noted that the couple had exchanged wedding bands and had filed joint federal income tax returns. *Hart v. Webster*, 2006 WL 1707975, 3 (Tex. App. – Austin 2006, *no pet.*).

In this case, there is no evidence in the administrative record that Thomas and McCall filed joint federal income tax returns, jointly owned property, had joint bank accounts, wore wedding rings, or divided alleged marital assets after McCall stopped living with Thomas and moved to Louisiana. There is no evidence in the administrative record that McCall ever signed any document as Thomas's husband. On the other hand, contrary to Plaintiff's contention that McCall agreed to be married to her, the administrative record contains a death certificate from the State of Louisiana documenting that, at the time of his death, McCall was married to Patricia Dotson. Plaintiff accordingly failed to present sufficient evidence to rebut the relative presumptions that there was no agreement between her and McCall to be married.

Even if the presumptions were rebutted, there is a clear factual basis in the administrative record to support the administrator's decision that McCall was not Thomas's common-law husband. Sun Life's decision that Plaintiff failed to prove the existence of a common-law marriage to McCall was neither incorrect nor arbitrary and capricious.

## IV. CONCLUSION AND ORDER

Plaintiff has not shown that Sun Life erred or acted in an arbitrary and capricious manner by denying Plaintiff's claim for insurance benefits under the Plan. As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 18] is **GRANTED** and Plaintiff's Motion for Summary Judgment [Doc. # 20] is **DENIED**. The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 26th day of **July, 2010**.

_____
Nancy F. Atlas
United States District Judge